UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JOHN MATTHEW AUSTIN,

       Petitioner,

v.                                  Case No. 3:14-cv-493-J-34PDB

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,

       Respondents.

_____

## ORDER

### I. Status

Petitioner John Matthew Austin, an inmate of the Florida penal system, initiated this action by filing a pro se Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus By a Person in State Custody (Petition, Doc. 1). In the Petition, Austin challenges a 2009 state court (Duval County, Florida) judgment of conviction for leaving the scene of a crash involving injury or death. Respondents have submitted an Answer to Petition for Writ of Habeas Corpus (Response, Doc. 12) with exhibits (Resp. Ex.). Despite sufficient time and multiple notices from this Court (see Order (Doc. 14); Order (Doc. 15)), Austin did not file a reply to the Response. As such, this case is ripe for review.

### II. Procedural History

The State of Florida charged Austin by information in count one with leaving the scene of a crash involving death and in count two with driving while license suspended, cancelled or revoked, resulting in serious injury or death. Resp. Ex. 2. Prior to trial, the State nolle prossed count two, and Austin proceeded to trial on count one. Resp. Ex. 3.

The jury found Austin guilty of leaving the scene of a crash involving death, as charged. Resp. Ex. 5. Through counsel, Austin filed a motion for new trial, which the state court denied by written order. Resp. Exs. 6, 7. The court sentenced Austin to fifteen years incarceration with credit for 190 days time served. Resp. Exs. 8, 9.

Austin filed a notice of appeal to the First District Court of Appeal (First DCA). Resp. Ex. 10. With the benefit of counsel, Austin filed an initial brief (Resp. Ex. 11), and the State filed an answer brief (Resp. Ex. 12). The First DCA affirmed Austin's conviction and sentence per curiam, without written opinion. Resp. Ex. 13; Austin v. State, 50 So. 3d 1138 (Fla. 1st DCA 2011) (table).

Austin next filed a pro se motion for postconviction relief in the state circuit court pursuant to Florida Rule of Criminal Procedure 3.850. Resp. Ex. 14. Without an evidentiary hearing, the court summarily denied Austin's Rule 3.850 motion. Resp. Ex. 15. Austin filed a pro se motion for rehearing, which the circuit court summarily denied. Resp. Ex. 16. Austin appealed the denial to the Florida First DCA (Resp. Ex. 17), filing a pro se initial brief in the appellate court (Resp. Ex. 18). The State filed notice that it would not file an answer brief. Resp. Ex. 19. The First DCA affirmed the circuit court's summary denial of postconviction relief per curiam, without written opinion. Resp. Ex. 20. Austin v. State, 130 So. 3d 229 (Fla. 1st DCA 2014) (table).

### III. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. See Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove

the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007) (citation omitted); Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318-19 (11th Cir. 2016). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Schriro, 550 U.S. at 474. The pertinent facts of this case are fully developed in the record before the Court. Because this Court can "adequately assess [Austin's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

## IV.  Limits of Habeas Relief, Exhaustion and Procedural Default

### A.  Limits of Habeas Relief

Federal habeas review "is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 68 (1991) (citations omitted). As such, federal habeas "does not lie for errors of state law." Id. at 67 (quotations omitted). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Id. at 67-68. As such, federal courts may not review claims based exclusively on state law issues even if the claims are "couched in terms of equal protection and due process." Branan v. Booth, 861 F.2d 1507, 1508 (11th Cir. 1988) (quotation omitted).

### B.  Exhaustion

Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. See 28 U.S.C. § 2254(b), (c). To exhaust state remedies, the petitioner must "fairly present[ ]"

every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. Castille v. Peoples, 489 U.S. 346, 351 (1989) (emphasis omitted).

As the United States Supreme Court has explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the """opportunity to pass upon and correct" alleged violations of its prisoners' federal rights.'" Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. Duncan, supra, at 365-366, 115 S. Ct. 887; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L.Ed.2d 1 (1999).

Baldwin v. Reese, 541 U.S. 27, 29 (2004); see also O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999) ("[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.")

To fairly present a claim, the petitioner must present it to the state courts as a federal, constitutional claim rather than as a matter of state law. See Duncan, 513 U.S. at 365-66; Preston v. Sec'y, Fla. Dep't of Corr., 785 F.3d 449, 456-59 (11th Cir. 2015). To do so, a petitioner can include "the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" Baldwin, 541 U.S. at 32. But raising a state law claim that "is merely similar to the federal habeas claim is insufficient to satisfy the fairly presented requirement." Duncan, 513 U.S. at 366. Likewise, merely citing to the federal constitution is insufficient to exhaust a claim in state court. Anderson v. Harless, 459 U.S. 4, 7 (1983); see also McNair v. Campbell,

416 F.3d 1291, 1302 (11th Cir. 2005) ("'The exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.'") (quoting Kelley v. Sec'y for the Dep't of Corr., 377 F.3d 1317, 1343-44 (11th Cir. 2004)). As explained by the Eleventh Circuit:

> To "fairly present" a claim, the petitioner is not required to cite "book and verse on the federal constitution." Picard v. Connor, 404 U.S. 270, 278, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971) (quotation omitted). Nevertheless, a petitioner does not "fairly present" a claim to the state court "if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." Baldwin, 541 U.S. at 32, 124 S. Ct. 1347. In other words, "to exhaust state remedies fully the petitioner must make the state court aware that the claims asserted present federal constitutional issues." Jimenez v. Fla. Dep't of Corr., 481 F.3d 1337, 1342 (11th Cir. 2007) (quoting Snowden v. Singletary, 135 F.3d 732, 735 (11th Cir.1998)) (concluding that the petitioner's claims were raised where the petitioner had provided enough information about the claims (and citations to Supreme Court cases) to notify the state court that the challenges were being made on both state and federal grounds).

Lucas v. Sec'y, Dep't of Corr., 682 F.3d 1342, 1352 (11th Cir. 2012). "The crux of the exhaustion requirement is simply that the petitioner must have put the state court on notice that he intended to raise a federal claim." Preston, 785 F.3d at 457 (11th Cir. 2015); see also French v. Warden, Wilcox State Prison, 790 F.3d 1259, 1270-71 (11th Cir. 2015), cert. denied, 136 S. Ct. 815 (2016).

### C. Procedural Default and Exceptions

"[W]hen 'the petitioner fails to raise the [federal] claim in state court and it is clear from state law that any future attempts at exhaustion would be futile," a procedural default occurs. Owen v. Sec'y, Dep't of Corr., 568 F.3d 894, 908 n.9 (11th Cir. 2009) (quotation omitted); see also Smith v. Jones, 256 F.3d 1135, 1138 (11th Cir. 2001) ("The teeth of

the exhaustion requirement comes from its handmaiden, the procedural default doctrine."). In such circumstances, federal habeas review of the claim is typically precluded. Pope v. Sec'y for Dep't of Corr., 680 F.3d 1271, 1284 (11th Cir. 2012); Smith, 256 F.3d at 1138. Nevertheless, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. See Coleman v. Thompson, 501 U.S. 722, 750 (1991); Ward v. Hall, 592 F.3d 1144, 1157 (11th Cir. 2010).

To show cause for a procedural default, "the petitioner must demonstrate 'some objective factor external to the defense' that impeded his effort to raise the claim properly in state court." Ward, 592 F.3d at 1157 (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986)). "[T]o show prejudice, a petitioner must demonstrate that 'the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness.'" Id. (quoting McCoy v. Newsome, 953 F.2d 1252, 1261 (11th Cir. 1992) (per curiam)).

Generally, "[n]egligence on the part of a prisoner's postconviction attorney does not qualify as 'cause.'" Maples v. Thomas, 565 U.S. 266, 280 (2012) (citing Coleman, 501 U.S. at 753). However,

> [w]hen a State requires a prisoner to raise an ineffective-assistance-of-trial-counsel claim in a collateral proceeding, a prisoner may establish cause for a default of an ineffective-assistance claim in two circumstances. The first is where the state courts did not appoint counsel in the initial-review collateral proceeding for a claim of ineffective assistance at trial. The second is where appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L.E.2d 674 (1984). To overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-

> trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit. Cf. Miller-El v. Cockrell, 537 U.S. 322, 123 S. Ct. 1029, 154 L.Ed.2d 931 (2003) (describing standards for certificates of appealability to issue).

Martinez v. Ryan, 566 U.S. 1, 14 (2012). The Eleventh Circuit has explained that this narrow exception to the procedural default rule

> applies only where (1) a state requires a prisoner to raise ineffective-trial-counsel claims at the initial-review stage of a state collateral proceeding and precludes those claims during direct appeal; (2) the prisoner failed to properly raise ineffective-trial-counsel claims during the initial collateral proceeding; (3) the prisoner either did not have counsel or his counsel was ineffective during those initial state collateral proceedings; and (4) failing to excuse the prisoner's procedural default would result in the loss of a "substantial" ineffective-trial-counsel claim.

Lambrix v. Sec'y, Fla. Dep't of Corr., 851 F.3d 1158, 1164 (11th Cir. 2017) (emphasis in original) (citations omitted); see also Arthur v. Thomas, 739 F.3d 611, 629 (11th Cir. 2014).

In the absence of a showing of cause and prejudice, a petitioner may obtain consideration on the merits of a procedurally defaulted claim if he can establish that a failure to consider the claim will result in a fundamental miscarriage of justice. Coleman, 501 U.S. at 724. This exception has been described as "exceedingly narrow in scope as it concerns a petitioner's 'actual' innocence rather than his 'legal' innocence." Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001). "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." Id. (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)), cert. denied, 535 U.S. 926 (2002)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." Calderon v. Thompson, 523

U.S. 538, 559 (1998) (quoting Schlup, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. Schlup, 513 U.S. at 324.

## V. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus. See 28.U.S.C. § 2254; Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011)). As such, federal habeas review of final state court decisions is "'greatly circumscribed' and 'highly deferential.'" Id. (quoting Hill v. Humphrey, 662 F.3d 1335, 1343 (11th Cir. 2011)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the claim on the merits. See Wilson v. Warden, Ga. Diagnostic Prison, 834 F.3d 1227, 1235 (11th Cir. 2016) (en banc), cert. granted, Wilson v. Sellers, 137 S. Ct. 1203 (2017); Marshall v. Sec'y, Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). Regardless of whether the last state court provided a reasoned opinion, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Harrington v. Richter, 562 U.S. 86, 99 (2011); see also Johnson v. Williams, -- U.S. --, 133 S. Ct. 1088, 1096 (2013).[1] Thus, the state court need not issue an opinion explaining its rationale in order

---

[1] The presumption is rebuttable and may be overcome "when there is reason to think some other explanation for the state court's decision is more likely." Richter, 562 U.S. at 99-100; see also Williams, 133 S. Ct. at 1096-97. However, "the Richter presumption is

for the state court's decision to qualify as an adjudication on the merits.  See Richter, 562

U.S. at 100; Wright v. Sec'y for the Dep't of Corr., 278 F.3d 1245, 1255 (11th Cir. 2002).

If the claim was "adjudicated on the merits" in state court, § 2254(d) bars relitigation

of the claim, unless the state court's decision (1) "was contrary to, or involved an

unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States," or (2) "was based on an unreasonable

determination of the facts in light of the evidence presented in the state court proceeding."

28 U.S.C. § 2254(d); Richter, 562 U.S. at 98.  As the Eleventh Circuit has explained:

> First, § 2254(d)(1) provides for federal review for claims of
> state courts' erroneous legal conclusions.  As explained by the
> Supreme Court in Williams v. Taylor, 529 U.S. 362, 120 S. Ct.
> 1495, 146 L.Ed.2d 389 (2000), § 2254(d)(1) consists of two
> distinct clauses: a "contrary to" clause and an "unreasonable
> application" clause.  The "contrary to" clause allows for relief
> only "if the state court arrives at a conclusion opposite to that
> reached by [the Supreme] Court on a question of law or if the
> state court decides a case differently than [the Supreme]
> Court has on a set of materially indistinguishable facts."  Id. at
> 413, 120 S. Ct. at 1523 (plurality opinion).  The "unreasonable
> application" clause allows for relief only "if the state court
> identifies the correct governing legal principle from [the
> Supreme] Court's decisions but unreasonably applies that
> principle to the facts of the prisoner's case."  Id.
>
> Second, § 2254(d)(2) provides for federal review for claims of
> state courts' erroneous factual determinations.    Section
> 2254(d)(2) allows federal courts to grant relief only if the state
> court's denial of the petitioner's claim "was based on an
> unreasonable determination of the facts in light of the
> evidence presented in the State court proceeding."  28 U.S.C.
> § 2254(d)(2).  The Supreme Court has not yet defined §
> 2254(d)(2)'s "precise relationship" to § 2254(e)(1), which
> imposes a burden on the petitioner to rebut the state court's
> factual findings "by clear and convincing evidence."  See Burt
> v. Titlow, 571 U.S. ——, ——, 134 S. Ct. 10, 15, 187 L.Ed.2d

---

a strong one that may be rebutted only in unusual circumstances."  Williams, 133 S. Ct.
at 1096.

348 (2013); accord Brumfield v. Cain, 576 U.S. ——, ——, 135 S. Ct. 2269, 2282, 192 L.Ed.2d 356 (2015). Whatever that "precise relationship" may be, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'"[2] Titlow, 571 U.S. at ——, 134 S. Ct. at 15 (quoting Wood v. Allen, 558 U.S. 290, 301, 130 S. Ct. 841, 849, 175 L.Ed.2d 738 (2010)).

Tharpe v. Warden, 834 F.3d 1323, 1337 (11th Cir. 2016); see also Daniel v. Comm'r, Ala. Dep't of Corr., 822 F.3d 1248, 1259 (11th Cir. 2016). Also, deferential review under Section 2254(d) generally is limited to the record that was before the state court that adjudicated the claim on the merits. See Cullen v. Pinholster, 563 U.S. 170, 181 (2011) (regarding § 2254(d)(1)); Landers v. Warden, Att'y Gen. of Ala., 776 F.3d 1288, 1295 (11th Cir. 2015) (regarding § 2254(d)(2)).

Where the state court's adjudication on the merits is "'unaccompanied by an explanation,' a petitioner's burden under section 2254(d) is to 'show [ ] there was no reasonable basis for the state court to deny relief.'" Wilson, 834 F.3d at 1235 (quoting Richter, 562 U.S. at 98). Thus, "a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the] Court." Richter, 562 U.S. at 102; see also Wilson, 834 F.3d at 1235; Marshall, 828 F.3d at 1285. To determine which theories could have supported the state appellate court's decision, the

---

[2] The Eleventh Circuit has previously described the interaction between § 2254(d)(2) and § 2254(e)(1) as "somewhat murky." Clark v. Att'y Gen., Fla., 821 F.3d 1270, 1286 n.3 (11th Cir. 2016); see also Landers, 776 F.3d at 1294 n.4; Cave v. Sec'y, Dep't of Corr., 638 F.3d 739, 744-47 & n.4, 6 (11th Cir. 2011); Jones v. Walker, 540 F.3d at 1277, 1288 n.5.

federal habeas court may look to a state trial court's previous opinion as one example of a reasonable application of law or determination of fact.  Wilson, 834 F.3d at 1239; see also Butts v. GDCP Warden, 850 F.3d 1201, 1204 (11th Cir. 2017).  However, in Wilson, the en banc Eleventh Circuit stated that the federal habeas court is not limited to assessing the reasoning of the lower court.[3]  834 F.3d at 1239.  As such,

> even when the opinion of a lower state court contains flawed reasoning, [AEDPA] requires that [the federal court] give the last state court to adjudicate the prisoner's claim on the merits "the benefit of the doubt," Renico [v. Lett, 449 U.S. 766, 733 (2010)] (quoting [Woodford v. Visciotti, 537 U.S. 19, 24 (2002)]), and presume that it "follow[ed] the law," [Woods v. Donald, --- U.S. ---, 135 U.S. 1372, 1376 (2015)] (quoting Visciotti, 537 U.S. at 24).

Id. at 1238; see also Williams, 133 S. Ct. at 1101 (Scalia, J., concurring).

Thus, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court."  Titlow, 134 S. Ct. at 16 (2013). "Federal courts may grant habeas relief only when a state court blundered in a manner so 'well understood and comprehended in existing law' and 'was so lacking in justification' that 'there is no possibility fairminded jurists could disagree.'"  Tharpe, 834 F.3d at 1338 (quoting Richter, 562 U.S. at 102-03).  "If this standard is difficult to meet, that is because it was meant to be."  Richter, 562 U.S. at 102.

## VI.    Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel.  That right is denied when a defense counsel's performance falls below an

---

[3] Although the Supreme Court has granted Wilson's petition for certiorari, the "en banc decision in Wilson remains the law of the [Eleventh Circuit] unless and until the Supreme Court overrules it.  Butts, 850 F.3d at 1205 n.2.

objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003), and Strickland v. Washington, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [Strickland,] 466 U.S. at 688, 104 S. Ct. 2052. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. Id., at 689, 104 S. Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id., at 687, 104 S. Ct. 2052.
>
> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., at 694, 104 S. Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Id., at 693, 104 S. Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id., at 687, 104 S. Ct. 2052.

Richter, 562 U.S. at 104.

Notably, there is no "iron-clad rule requiring a court to tackle one prong of the Strickland test before the other." Ward, 592 F.3d at 1163. Since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in Strickland: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." 466 U.S. at 697.

Finally, "the standard for judging counsel's representation is a most deferential one." Richter, 562 U.S. at 105. "Reviewing courts apply a 'strong presumption' that counsel's representation was 'within the wide range of reasonable professional assistance.'" Daniel, 822 F.3d at 1262 (quoting Strickland, 466 U.S. at 689). "When this presumption is combined with § 2254(d), the result is double deference to the state court ruling on counsel's performance." Id. (citing Richter, 562 U.S. at 105); see also Evans v. Sec'y, Dep't of Corr., 703 F.3d 1316, 1333-35 (11th Cir. 2013) (en banc) (Jordan, J., concurring).

"The question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied Strickland's deferential standard," then a federal court may not disturb a state-court decision denying the claim. Richter, 562 U.S. at 105. As such, "[s]urmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010).

## VII. Findings of Fact and Conclusions of Law

### A. Ground One

Austin contends that the trial court committed reversible error by denying his motion for mistrial due to the prosecutor's improper remarks, which denied him a fair and impartial trial. Specifically, Austin asserts:

> While addressing the jury during closing arguments at trial, the prosecutor stated that "[A]nd we will never know why this crash occurred, and that's why what he did was a crime, because we're never going to know . . . because we were

never able to get that information." Later, the prosecutor stated, "Who knows. We'll never get inside his head. We'll never know what . . ." at which point trial counsel lodged an objection and moved for a mistrial, arguing that the statements were comments about Petitioner's right to remain silent and improperly shift the burden to the defense. The State argued that it could explore possibilities for motive making the comment unobjectionable. The trial court overruled defense's objection. Petitioner was subsequently found guilty as charged.

Petition at 3.

    Austin presented this claim of trial court error to the First DCA on direct appeal. Resp. Ex. 11. Nevertheless, Respondents assert that he failed to present a violation of federal constitutional law. See Response at 11; Petition at 3; Resp. Ex. 3 at 140, 140-44; Resp. Ex. 11. Upon review, the Court agrees.[4] Nowhere in Austin's initial brief to the First DCA did he cite "the federal source of law on which he relie[d] or a case deciding such a claim on federal grounds, or simply label[ ] the claim 'federal.'" Baldwin, 541 U.S. at 32. Neither did Austin refer to the United States Constitution, any federal standards, any United States Supreme Court cases, any federal cases, or even any Florida cases interpreting the federal Constitution. See Resp. Ex. 11; see also Landers, 776 F.3d at 1296; Lucas, 682 F.3d at 1353. Instead, Austin relied exclusively on the Florida

---

[4] As a preliminary matter, it is not clear that Austin states a cognizable federal constitutional claim in his federal Petition. Austin complains that the prosecutor and trial court denied him a fair and impartial trial and that the court should have granted a mistrial because the prosecutor commented about Austin's right to remain silent and improperly shifted the burden to the defense. Petition at 3. Nowhere does Austin cite the United States Constitution, nor does he even use common adjectives or phrases that might indicate the nature of his claimed violation, such as "constitutional," "due process" or "Griffin error." See Griffin v. California, 380 U.S. 609 (1965). Even reading Austin's pro se Petition liberally, the Court struggles to identify a precise, federal constitutional violation asserted by Austin. See Landers, 776 F.3d at 1296, 1297 ("Although we construe pro se petitions liberally, . . . we will not infer a claim out of thin air." (footnote and citation omitted)).

Constitution and Florida cases interpreting Florida law, <u>see</u> Resp. Ex. 11, and he cited the Florida standard for reviewing prosecutorial comments on a defendant's failure to testify, <u>see</u> <u>id.</u> at 18.

"It is not enough that . . . a somewhat similar state-law claim was made." <u>Anderson</u>, 459 U.S. at 6; <u>see also</u> <u>Duncan</u>, 513 U.S. at 364; <u>Kelley</u>, 377 F.3d at 1343-44. While the question of whether "a petitioner can exhaust a federal claim by raising an analogous state claim" where the standard for deciding both is an open question, <u>see</u> <u>Preston</u>, 785 F.3d at 460 (citing <u>Baldwin</u>, 541 U.S. at 33-34), such is not the case here. In the instant matter the standards for evaluating Austin's challenge to the prosecutor's comments are different.[5] Upon review, the Court finds that Austin failed to fairly present his claim in ground one as a federal claim to the state court. As such, review of this claim is barred by Austin's procedural default, unless he can show that he satisfies the narrow exceptions to the bar. Here, Austin argues neither that there was cause for and prejudice from the failure to raise the claim, nor that it will result in a fundamental miscarriage of justice. As such, federal habeas review of the claim in ground one is barred.

Even if Austin had properly exhausted the claim in ground one, relief would be due to be denied on the merits. To the extent Austin may have claimed that the trial court violated his federal constitutional rights when it denied a mistrial based on the

---

[5] The Florida and federal standards for reviewing comments on a defendant's failure to testify differ. <u>State v. Kinchen</u>, 490 So. 2d 21, 22 (Fla. 1985). In Florida, "anything 'fairly susceptible of being interpreted by the jury as a comment on [defendant's] failure to testify' is 'a serious error.'" <u>State v. Horwitz</u>, 191 So. 3d 429, 445 (Fla. 2016) (quoting <u>Kinchen</u>, 490 So. 2d at 22). But by the federal standard, a defendant must "show that the allegedly offensive comment was either manifestly intended to be a comment on the defendant's silence or that the comment naturally and necessarily related to the defendant's silence." <u>Isaacs v. Head</u>, 300 F.3d 1232, 1270 (11th Cir. 2002); <u>see also</u> <u>Griffin</u>, 380 U.S. at 609; <u>Kinchen</u>, 490 So. 2d at 22.

prosecutor's allegedly negative comments on Austin's right to remain silent at trial, his claim would best be addressed as asserting a violation of the Supreme Court's decision in Griffin v. California, 380 U.S. 609 (1965). The Eleventh Circuit has recognized the standards for evaluating a Griffin claim:

> "The Fifth Amendment prohibits a prosecutor from commenting directly or indirectly on a defendant's failure to testify. A prosecutor's statement violates the defendant's right to remain silent if either (1) the statement was manifestly intended to be a comment on the defendant's failure to testify; or (2) the statement was of such a character that a jury would naturally and necessarily take it to be a comment on the failure of the accused to testify. The question is not whether the jury possibly or even probably would view the remark in this manner, but whether the jury necessarily would have done so. The defendant bears the burden of establishing the existence of one of the two criteria. The comment must be examined in context, in order to evaluate the prosecutor's motive and to discern the impact of the statement. Because the trial judge is the only person who has the opportunity to observe the prosecutor's demeanor firsthand, we review the district court's denial of the motion for mistrial for abuse of discretion."

Isaacs v. Head, 300 F.3d 1232, 1270 (11th Cir. 2002) (quoting United States v. Knowles, 66 F.3d 1146 (11th Cir. 1995) (citations, quotations and footnotes omitted)). Additionally, in an unpublished opinion, the Eleventh Circuit instructed:

> We have strictly enforced the defendant's burden to make such a showing, and the inquiry is not simply whether a jury possibly or even probably would view the statement in such a manner. Id. Rather, we must determine only "whether the jury necessarily would have done so." See id. (internal quotation marks omitted). In applying this test, we look to the context in which the prosecutor made the challenged statement in order to determine the manifest intention that prompted it, as well as the natural and necessary impact that it might have upon the jury. Solomon v. Kemp, 735 F.2d 395, 401 (11th Cir.1984). A comment on the failure of the defense, as opposed to the defendant's failure to testify, to counter or explain the testimony presented or evidence introduced does not impinge upon a defendant's privilege against self-

incrimination. <u>Duncan v. Stynchcombe</u>, 704 F.2d 1213, 1215–16 (11th Cir.1983) (per curiam).

<u>Gay v. Sec'y, Florida Dep't of Corr.</u>, 523 F. App'x 560, 563 (11th Cir. 2013) (unpublished).

Finally, the Court notes that <u>Griffin</u> errors are subject to harmless error review, and

> a federal constitutional error is considered harmless on collateral review unless there is "actual prejudice." <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 637, 113 S. Ct. 1710, 1722, 123 L.Ed.2d 353 (1993) (internal quotation marks omitted). "Actual prejudice" requires that the error have had a "substantial and injurious effect or influence" upon the verdict. <u>Id.</u> (internal quotation marks omitted). Under this standard, an error is not harmless where one is left in grave doubt as to whether the error substantially and injuriously affected or influenced the verdict. <u>See</u> <u>O'Neal v. McAninch</u>, 513 U.S. 432, 437-38, 115 S. Ct. 992, 995, 130 L.Ed.2d 947 (1995).

<u>Id.</u>

Although the First DCA did not issue a written opinion, the order affirming Austin's conviction and sentence qualifies as a merits adjudication to which this Court owes deference. <u>See</u> <u>Richter</u>, 562 U.S. at 100. As such, after determining what arguments or theories could have supported the First DCA's decision; this Court must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior Supreme Court decision. <u>See</u> <u>id.</u> at 102; <u>see also</u> <u>Wilson</u>, 834 F.3d at 1235; <u>Marshall</u>, 828 F.3d at 1285. The Court also accords the state substantial deference when reviewing factual determinations. <u>Brumfield</u>, 135 S. Ct. at 2277; <u>Tharpe</u>, 834 F.3d at 1337; <u>Bui v. Haley</u>, 321 F.3d 1304, 1312 (11th Cir. 2003) (citations omitted).

During closing argument, the prosecutor first argued that "we will never know why this crash occurred, and that's why what he did is a crime, because we're never going to know because we were never able to get that information." Resp. Ex. 3 at 134. Defense

counsel did not contemporaneously object. Later, the prosecutor argued that "[w]e'll never get inside the defendant's head. We'll never know what – " before defense counsel interrupted with an objection. Id. at 140. Outside the presence of the jury, the prosecutor's co-counsel responded to the objection by offering the following explanation:

> [PROSECUTOR]: If I may, I think in the context of the charge of this particular case, the clear implication of the statement is that we will never know the motive behind the defendant leaving the scene. It is clearly respectfully the State's position that we are entitled to get into the motive or lack thereof as to why the defendant did not remain at the scene. Did he remain at the scene or not remain at the scene because his license was suspended. Did he not remain at the scene because of drinking. Did he not remain at the scene for – because he was scared of the – of the witness or for some other unknown reason. That's the whole purpose behind the charge of leaving the scene. I do not think it is a comment on the defendant's right to remain silent, it is a comment on the defendant's motive or lack thereof for leaving the scene.

Id. at 141-42. After additional discussion, the Court found that defense counsel

> brought up that [ ] willfulness and intent were necessary in your opening statement, so I don't find that improper comment on the right to remain silent. Instructions themselves talk about what the defendant knew or should have known, willfully failed to stop. There are all those things that reflect intent. That's not a – I understand a motive or what's in someone's head is – as [the prosecutor] states is a common phrase to express what they're thinking and what was going on, and I don't – I'm going to overrule the objection.

Id. at 142-44. The trial court later instructed the jury:

> The constitution requires the State to prove its accusations against the defendant. It is not necessary for the defendant to disprove anything, nor is the defendant required to prove his innocence. It is up to the State to prove the defendant's guilty by evidence.
>
> The defendant exercised a fundamental right by choosing not to be a witness in this case. You must not view this as an admission of guilt or be influenced in any way by his decision.

> No juror should ever be concerned that the defendant did or
> did not take the witness stand or give testimony in the case.

Id. at 173.

The First DCA could have affirmed Austin's conviction and sentence for several reasons.  As the State argued, Austin's counsel failed to preserve the issue for appellate review by not objecting contemporaneously to the first prosecutorial comment about which he now complains.  In addition, the First DCA could have agreed with the State that the first comment did not pertain to Austin's silence and did not shift the burden of proof, but rather was intended to convey that the reason why leaving the scene of an accident is a crime is because it may interfere with or prevent a determination of the cause or causes of the crash.  Resp. Ex. 12 at 7.  With respect to the second comment, the First DCA could have accepted the state's argument that it was not a comment on Austin's silence, did not shift the burden of proof, and was not improper.  Id.  Specifically, the state argued on appeal:

> Viewed in context, the comment was simply an assertion that there is no way to prove conclusively what is in a person's mind.  The prosecutor pointed out that there was evidence that appellant had been drinking and that his license was suspended and argued that appellant may have left the scene for one or both of those reasons.  The same comments could have been made even if the appellant had testified.  If appellant had testified that he left because he was afraid of [the boyfriend of one of the victims], the prosecutor could have made the exact same argument, i.e., that there is no way to tell what is in a person's mind, that all of the eyewitnesses testified that appellant was not threatened by [the boyfriend], and that the evidence supported a finding, beyond a reasonable doubt, that appellant left the scene willfully.

Id.  Moreover, the state also argued that even if one or both of the prosecutor's comments were improper, they were harmless.  Id. at 8.  Thus, the First DCA could also have

affirmed based on harmless error. In any of these circumstances, the First DCA's summary affirmance was not contrary to, and did not involve an unreasonable application of <u>Griffin</u>, and it did not result from an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Austin's claim in ground one is due to be denied.

## B. <u>Ground Two</u>

As ground two, Austin asserts that his counsel was ineffective when he failed to make adequate, fact-specific arguments when moving for a judgment of acquittal. <u>See</u> Petition at 4. Specifically, he contends that counsel failed to argue that the state had not produced evidence that Austin knew or should have known about the death of Timothy C. Wuellenweber before leaving the scene of the accident. <u>Id.</u> He submits that the facts established at trial demonstrated that no one at the scene was aware of Mr. Wuellenweber's condition before Austin left. <u>Id.</u>

Austin presented this claim of ineffective assistance of trial counsel to the state circuit court as ground one of his motion for postconviction relief under Rule 3.850. Resp. Ex. 14. After identifying the standards of performance and prejudice under <u>Strickland</u>, the state circuit court summarily denied relief, as follows:

> In ground one, the Defendant alleges that counsel was ineffective for failing to make an adequate fact-specific argument when moving for a judgment of acquittal. At trial, counsel stated:
>
>> Your Honor, at this time on behalf of my client I would move for a judgement of acquittal. It's more – nothing more than a formality at this point, but that – our position would be that based on the evidence in the light most favorable to the State, the State hasn't made a prima facie case of leaving the scene of an accident.

(Exhibit "C," pages 123-24).

While a proper motion for judgment of acquittal must list specific grounds on which it is based, here, **the Defendant cannot demonstrate that he was prejudiced by counsel's failure to make a fact-specific argument.** At trial, sufficient evidence was presented to support the jury's finding that the State proved every element of Leaving the Scene of a Crash Involving Death beyond a reasonable doubt. (Exhibit "C.") As such, it would have been improper for the Court to grant a judgment of acquittal.

Specifically, the Defendant asserts that the State presented no evidence demonstrating that the Defendant was aware that he had injured or killed Timothy C. Wuellenweber. According to the Defendant, **the State's evidence only demonstrated that the Defendant was guilty of leaving the scene of an accident involving injury to Mary Deacon**, who was also struck by the Defendant's vehicle in the accident leading to Mr. Wuellenweber's death. **This is immaterial.** One of the main purposes of section 316.027, Florida Statutes, is to ensure that accident victims receive medical assistance as soon as possible. State v. Dumas, 700 So. 2d 1223, 1225 (Fla. 1997). In order to convict the Defendant under section 316.027(1)(b), Florida Statutes, the State was required to prove the following four elements beyond a reasonable doubt: (1) the defendant was the driver of a vehicle involved in a crash resulting in the death of any person; (2) the Defendant knew or should have known that he was involved in a crash; (3) the Defendant should have known of the injury to **or** death of the person; and (4) the Defendant willfully failed to stop at the scene of the crash or as close to the crash as possible and remain there until he had given "identifying information" to the injured person and to any police officer investigating the crash. Florida Standard Jury Instruction 28.4 (2009). **At trial, evidence was presented demonstrating that the Defendant was aware that he had run over at least one person and was attempting to maneuver his vehicle off those trapped under its own weight.** (Exhibit "C," pages 27, 38, 51, and 79). **As such, it is clear from the record that the Defendant was made aware at the accident scene that he had run over and injured someone with his vehicle. A determination of whether the Defendant knew at the time of the accident he had specifically run his vehicle over Mr. Wuellenweber**

**was not at issue in this case, as it was not necessary for the State to prove that the Defendant knew that he had run over Mr. Wuellenweber specifically in order to obtain a conviction.**

Resp. Ex. 15 (emphasis added).

Following the denial of his motion for rehearing (Resp. Ex. 16), Austin exhausted this claim by appealing to the Florida First DCA and presenting the denial of this claim as "Argument I" of his pro se initial brief. Resp. Ex. 18. The First DCA affirmed per curiam without written opinion, Resp. Ex. 20, and the affirmance qualifies as an adjudication on the merits. See Richter, 562 U.S. at 100. Under Wilson, the Court defers to the state appellate court's order. Id. at 1232-33; see also Butts, 850 F.3d at 1204 ("it is to the [last appellate] decision instead of the typically more specific trial court decision that a federal habeas court should look"). Because the appellate court's adjudication was unaccompanied by an explanation, the Court may evaluate the state trial court's written opinion to determine if it is a reasonable application of law or a reasonable determination of fact.[6] Wilson, 834 F.3d at 1239; Butts, 850 F.3d at 1204.

In Dumas, the state law precedent relied upon by the state trial court, the Florida Supreme Court explained how the purpose of the criminal statute at issue – leaving the scene of a crash -- affects the result-driven sanction for the offense, but not the knowledge element required for conviction of committing the substantive offense. The Florida Supreme Court stated:

> Florida law imposes an affirmative duty on a driver to stop, render aid, and provide certain information necessary for an

---

[6] Where "it does not matter to the result, and to avoid any further complications if the United States Supreme Court disagrees with [the] Wilson decision," the federal habeas court may apply § 2254(d) by deferring to "the more state-trial-court focused approach." Butts, 850 F.3d at 1204.

insurance claim and an accident report whenever there is an injury. § 316.062, Fla. Stat. (1995). Florida law further makes it a felony to fail to complete these duties. § 316.027(2), Fla. Stat. (1995). One of the main purposes of the statute is to ensure that accident victims receive medical assistance as soon as possible. Herring v. State, 435 So. 2d 865, 866 (Fla. 3d DCA 1983) ("It is apparent that the purpose of sections 316.027 and 316.062 is to assure that any injured person is rendered aid and that all pertinent information concerning insurance and names of those involved in the traffic accident is exchanged by the parties."). The fact that a death rather than an injury has occurred does not trigger a different set of duties. Thus, the knowledge element that triggers the affirmative duty is the same in each circumstance, but the sanction imposed is determined by the results of the accident. This result-driven sanction implicitly recognizes the possibility that a fleeing driver's failure to stop and render aid may be the reason that an injured person dies. Moreover, requiring proof that a driver had knowledge of death would lead to an absurd result: a driver who callously leaves the scene of a serious accident can avoid a second-degree felony conviction by disavowing knowledge of death.

Dumas, 700 So. 2d at 1225–26. Thus, it matters not whether Austin knew that Wuellenweber had been killed or even that he had been struck in addition to Mary Deacon. The State was not required to prove that Austin knew that Wuellenweber had been killed.

Likewise, Austin did not need to appreciate the extent of the injuries he caused or the number of people he injured in order to be convicted. In Williams v. State, the defendant fled the scene on foot after causing a crash with another car containing three occupants, a driver and two small children. 732 So. 2d 431 (Fla. 2d DCA 1999). All three sustained what appeared at the scene to be minor injuries. The five-year old girl, who was wearing a seatbelt, complained that her stomach hurt immediately after the accident. Although she was taken to the hospital and released, she developed complications from

internal injuries and died the following day.  The Second District Court of Appeal explained:

> The State is obligated to prove that a defendant . . . knew or reasonably should have known that a person was at least injured in the accident.  The level of the offense is then determined by whether the person survives or dies from the injury.  In this case, from the speed of the cars, the extent of the damage to the vehicles, and the injury to his passenger, the jury was free to find that [the defendant] should have known that a person was at least injured in the accident. [The defendant] did not need to appreciate the extent of the injuries or the number of people injured in order to be convicted.

Id. at 432; cf. Franklin v. State, 719 So. 2d 938, 940 (Fla. 1st DCA 1998).

The state trial court's written opinion did not unreasonably apply Strickland by finding that no prejudice resulted from counsel's failure to argue specifically for a judgment of acquittal based on the lack of evidence that Austin knew of the death of Wuellenweber before he left the scene.  As such, the state appellate court's summary affirmance was neither contrary to nor an unreasonable application of Strickland, and it was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  The claim in ground two is due to be denied.

## C.  Ground Three

As ground three, Austin asserts that his counsel was ineffective because he failed to object to a material variance between the names of the victim alleged in the charging information, evidence adduced at trial, and the jury instruction.  Specifically, Austin contends that because the information charged him with leaving the scene of a crash resulting in the death of Timothy C. Wuellenweber, the state was required to prove that Austin knew that Mr. Wuellenweber had been killed when he left the scene.  He contends that no evidence was presented at trial establishing that anyone at the scene, much less

Austin, knew that Mr. Wuellenweber had died as a result of the accident. Austin contends that the jury instruction varied materially from the charging information because the jury instruction was nonspecific whereas the charging information specifically named Timothy C. Wuellenweber as the victim. Austin submits that the information misled him in the preparation of his defense and that his counsel should have objected to the jury instruction. Petition at 5-6.

Austin did not present this claim of ineffective assistance of trial counsel to any state court by postconviction motion or otherwise. <u>See</u> Petition at 6-7; Resp. Exs. 11, 14, 16, 18. As such, he did not exhaust the claim, and as he cannot now return to the state court to exhaust this claim by successive postconviction motion, it is procedurally defaulted. <u>See</u> <u>Picard</u>, 404 U.S. at 275; <u>Bailey v. Nagle</u>, 172 F.3d 1299, 1305 (11th Cir. 1999) ("Federal courts may treat unexhausted claims as procedurally defaulted, even absent a state court determination to that effect, if it is clear from state law that any future attempts at exhaustion would be futile."). Austin contends that because he was not appointed counsel to assist him with his state postconviction motion, he was unable to recognize, research or present this claim of trial counsel ineffectiveness within the manner or timeframe dictated by Florida law. <u>Id.</u> at 7. Thus, Austin appears to rely on <u>Martinez v. Ryan</u>, 566 U.S. 1 (2012), to excuse his procedural default.

To overcome the procedural default pursuant to <u>Martinez</u>, Austin must demonstrate more than that the state courts did not appoint counsel in the initial-review collateral proceeding. 566 U.S. at 14. Austin must "also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." <u>Id.</u> (citations omitted); <u>see</u>

<u>also</u> <u>Lambrix</u>, 851 F.3d at 1164. Because Austin's underlying claim of ineffective assistance of counsel claim is not substantial and lacks merit, his procedural default of such claim cannot be excused under <u>Martinez</u>.

As discussed in ground two, Austin incorrectly asserts that "[u]nder Florida law, the prosecution was required to prove that Petitioner left the scene of the accident knowing that Mr. Wuellenweber had been killed." Petition at 5; <u>see</u> <u>supra</u> at Section VII.B. Because the penalty under the statute is driven by the result, <u>see</u> <u>Dumas</u>, 700 So. 2d at 1225-26, the inclusion of Mr. Wuellenweber's name in the information dictates the maximum penalties faced by Austin. The elements, including the knowledge element (which is the same regardless of whether the victim is injured or dies), dictate the proof required at trial and the jury instructions. <u>See</u> <u>id.</u>

Consistent with the elements, the court instructed the jury:

> To prove the crime of leaving the scene of a crash, the State must prove the following four elements beyond a reasonable doubt: One, John Matthew Austin was the driver of a vehicle involved in a crash resulting in the death of any person; two, John Matthew Austin knew or should have known that he was involved in a crash; three, John Matthew Austin knew or should have known of the injury to or death of the person; four, John Matthew Austin willfully failed to stop at the scene of the crash or as close to the crash as possible and remain there until he had given identifying information to the injured person, person attending to the vehicle, and to any police officer investigating the crash.

Resp. Ex. 3 at 168-69. This instruction properly addressed the elements of proof required for a conviction. Thus, Austin's claim that his counsel was ineffective for failing to object to a material variance among the names of the victim alleged in the information, the evidence presented at trial, and the jury instructions, is not a substantial claim and lacks merit. Because the objection would have been meritless, counsel did not perform

deficiently by failing to raise it, and Austin cannot show prejudice.[7]  As such, Austin cannot excuse his procedural default of this claim under <u>Martinez</u>, and the claim asserted in ground three is due to be denied.

## VIII. Certificate of Appealability
## Pursuant to 28 U.S.C. § 2253(c)(1)

If Petitioner seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. This Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," <u>Tennard v. Dretke</u>, 542 U.S. 274, 282 (2004) (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 335-36 (2003) (quoting <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. <u>See</u> <u>Slack</u>, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition

---

[7] The Eleventh Circuit has repeatedly held that where a claim lacks merit, counsel is not ineffective for failing to raise it.  <u>See, e.g.</u>, <u>Meeks v. Moore</u>, 216 F.3d 951, 968 (11th Cir. 2000) (noting that because counsel has no duty to bring nonmeritorious motions, the failure to do so cannot satisfy either prong of <u>Strickland</u>); <u>accord</u> <u>Brownlee v. Haley</u>, 306 F.3d 1043, 1066 (11th Cir. 2002); <u>Ladd v. Jones</u>, 864 F.2d 108, 110 (11th Cir. 1989).

states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, this Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.      The Petition (Doc. 1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.      The **Clerk of the Court** shall enter judgment denying the Petition and dismissing this case with prejudice.

3.      If Austin appeals the denial of the Petition, the Court denies a certificate of appealability. Because this Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

4.      The **Clerk of the Court** is directed to close this case and terminate any pending motions.

DONE AND ORDERED at Jacksonville, Florida, this 12th day of May, 2017.


MARCIA MORALES HOWARD
United States District Judge

lc22
c:
John Matthew Austin #J39825
Counsel of Record